# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2816 | **DATE** | 3/21/2003 |
| **CASE TITLE** | Jose Dominguez vs. CTA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

<br>

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Defendant's motion for summary judgment (14) is granted. Ruling date of March 25, 2003 is stricken. Enter memorandum opinion and order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 2 4 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 156 |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | U.S. DISTRICT COURT CLERK  03 MAR 24 AM 7:47 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOSE DOMINGUEZ,                          )
                                         )
    Plaintiff,       )  No. 02 C 2816
                                         )
vs.                                      )  Judge Lindberg
                                         )
CHICAGO TRANSIT AUTHORITY,               )
                                         )
    Defendant.        )

DOCKETED
MAR 2 4 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jose Dominguez, brings this action pursuant to 42 U.S.C. § 2000(e) et. seq., claiming defendant, Chicago Transit Authority ("CTA"), discriminated against him on the basis of his national origin (Mexican). Defendant has moved for summary judgment. For the reasons stated below, defendant's motion for summary judgment is granted.

Plaintiff, a Mexican American, was employed by defendant as a bus operator from January 1974 until his retirement in lieu of discharge on October 1, 2000. Before July 18, 2000, plaintiff had only one safety violation, a written warning for leaving a bus in gear while it was unattended. On July 20, 2000, plaintiff's bus was given a 4,000 Mile Inspection. During the inspection, Patrick Small, a maintenance manager at CTA, reviewed the surveillance camera recordings and found that camera number 4's view was obstructed due to a substance on the lens during plaintiff's July 18, 2000, shift. Upon physical inspection, Small discovered gum on the lens of camera number 4. He removed the gum and reported his finding to Gertha Parish, Transportation Manager at defendant's Archer Garage.

Defendant installed cameras on its buses in 1999 for the safety of passengers and bus operators and to deter crime. The four surveillance cameras on a bus are positioned as follows:

two are in the entrance way of the bus above the driver's compartment (one aimed at the step well of the entrance door, the other toward the rear of the bus); and two are in the rear of the bus (one aimed toward the rear door step well and the other toward the front of the bus). Camera number 4 is the one located in the rear aimed towards the rear door step well. Prior to the gum covering incident, the cameras showed plaintiff walking towards the rear of the bus and stretching his arms. Plaintiff does not deny his presence at that time. After viewing the tape, Parish interviewed plaintiff on July 25, 2000, with regard to the allegation that plaintiff had defaced CTA equipment on July 18, 2000. She prepared an Interview Record of the July 25, 2000, meeting. Parish told plaintiff that he had been observed via monitor defacing the camera equipment on his bus, placing an object over the camera lens which had to be removed by the maintenance department. Plaintiff told Parish he did nothing to the camera on purpose. Parish removed plaintiff from service and referred him to Earl Swopes, Lead Transportation Manager, for an interview on July 31, 2000. Parish prepared a Special Occurrence Report.

In preparation for the July 31, 2000 interview, Swopes reviewed Parish's Special Occurrence Report and the surveillance video tape from July 18, 2000. From the videotape, Swopes saw plaintiff covering the camera lens of his bus. A union representative, Melvin Dukes, also attended the July 31, 2000, interview. Initially, plaintiff stated he simply walked to the center of the bus and stretched his arms near the camera. However, after being reminded of the consequences of making false or misleading statements and being shown the photographs captured by other onboard cameras, he changed his account of the event and confessed to placing the gum over the lens of camera number 4. Dukes also encouraged plaintiff to give a truthful response to the questions being asked during the interview. Plaintiff never fully explained why

he placed the gum over the camera lens. Swopes referred plaintiff to Ronald Mitchell, General Manager, for a disciplinary hearing on August 16, 2000 and also prepared a "Recommendation of Discharge."

In preparation for the hearing on August 16, 2000, Mitchell reviewed Parish's Interview Record and Special Occurrence Report, Swopes' Recommendation of Discharge, and the July 18, 2000, videotape and photographs from plaintiff's bus.

The parties dispute whether Mitchell discussed the situation with Parish before the meeting and whether he took that discussion into consideration in his determination that plaintiff should be terminated. It is undisputed that Mitchell had and considered Parish's two reports which stated her position he still had her two prepared reports which stated her position unambiguously. Because there is no evidence that Parish changed her position regarding plaintiff, the disputed evidence would at most be cumulative and so could not make a difference either at trial or in the decision of the motion for summary judgment.

Mitchell discussed with Swopes his reasons for recommending that plaintiff be terminated, as outlined in the Recommendation for Discharge. Plaintiff, Mitchell, Swopes, Vela Martinez, Administrative Manager at Archer Garage, Melvin Dukes and John Knighten, union representatives who spoke on behalf of plaintiff, were all present during the August 16, 2000, disciplinary hearing. Plaintiff was charged with violating a multitude of CTA rules including: Rule No. 7 (a,b,c) Obedience to Rules, Rule No. 14 (e, w) Personal Conduct, Rule No. 12 (d,e,) Responsibility for Property, Rule No. 24 Use of Best Judgment, Bus System Rule B1.8.1 Protection of Property, and Bus System Rule B3.2 Unauthorized alterations to equipment. Based on his discussion with Swopes, his review of Parish's July 25 Interview Record, Parish's Special

Occurrence Report, Swopes' Recommendation for Discharge, the videotape, and the disciplinary

hearing with plaintiff and union representatives, Dukes and Knighten, Mitchell determined that

plaintiff's employment should be terminated. Plaintiff was given the opportunity to retire in lieu

of discharge which he did on October 1, 2000.

Summary judgment is proper when there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party

moving for summary judgment has the initial burden of submitting affidavits and other

evidentiary material to show the absence of a genuine issue of material fact. Celotex Corp. v.

Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Once the moving party has

sustained the initial burden, the opposing party may not rest upon the mere allegations or denials

of the pleadings, but instead must come forward with specific evidence, by affidavits or as

otherwise provided in Rule 56, showing that there is a genuine issue for trial. Celotex, 477 U.S.

at 324. Summary judgment is properly entered in favor of a party when the opposing party is

unable to make a showing sufficient to prove an essential element of the case on which the

opposing party bears the burden of proof. United Ass'n of Black Landscapers v. City of

Milwaukee, 916 F.2d 1261, 1264 (7th Cir. 1990), citing Commons v. Williams, 859 F.2d 467,

469 (7th cir. 1988).

Plaintiff claims defendant discharged him on account of his national origin. To prevail on

a Title VII discrimination claim, plaintiff must prove he was a victim of intentional

discrimination under either the direct method, or the indirect, burden-shifting method articulated

4

in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). <u>See Flores v. Preferred Technical Group</u>, 182 F.3d 512, 514 (7th Cir. 1999).  Because

plaintiff does not point to any direct proof that his national origin was a factor in the decision to

discharge him from employment, the court must analyze his claims using the <u>McDonnell</u>

<u>Douglas</u> test.

Plaintiff is required to establish all four elements of a prima facie case for discriminatory

discharge in order to survive defendant's motion: (1) membership in a protected class; (2)

satisfactory job performance; (3) an adverse employment action; and (4) more favorable

treatment of similarly-situated employees outside of the protected class. <u>See Hughes v. Brown</u>,

20 F.3d 745, 746 (7th Cir. 1994). If plaintiff meets his threshold burden of establishing a prima

facie case, the burden of production then shifts to defendant to articulate a legitimate, non-

discriminatory reason for its employment actions. <u>Id</u>. at 746-47. If defendant meets this

requirement, plaintiff must produce evidence showing defendant's proffered reasons were

"merely pretextual." <u>Id</u>.

Defendant argues that plaintiff cannot even demonstrate a prima facie case of national

origin discrimination and thus his claim fails. The court agrees. Plaintiff, as a Mexican

American, clearly satisfies the first element. As for the third element, plaintiff's retirement in lieu

of discharge qualifies as an adverse employment action. <u>Lesch v. Crown Cork & Seal Co.</u>, 282

F.3d 467, 472 (7th Cir. 2002), (former employee who was forced into early retirement satisfied

adverse employment requirement). Plaintiff's national origin discrimination claim nonetheless

fails because he cannot satisfy either of the fourth or second prongs of the test.

Plaintiff can not identify a single employee outside of the protected class who was similarly-situated and treated more favorably by defendant. Plaintiff has not pointed to any employees, outside of the protected class, who were not discharged for unauthorized adjustment to, tampering with or sabotage to equipment or property "imperiling safety." Plaintiff's contention that certain similarly-situated employees were not discharged is without evidentiary support and so cannot be considered in this regard. Therefore, plaintiff has not satisfied the fourth prong in the prima facie case.

Plaintiff was not meeting defendant's legitimate expectations at the time of his termination. Although plaintiff had a long and generally satisfactory employment history with defendant, it was legitimate for defendant to expect its bus operators not to obstruct security camera lens. In placing the gum on the lens of camera number 4, plaintiff failed to meet his legitimate expectations of defendant. See Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 336 (7th Cir. 1991), (prior satisfactory performance has no bearing on whether plaintiff was performing according to defendant's expectations at the time his employment ended). Plaintiff's argument that tampering with or sabotage to one out of four cameras did not imperil the safety of the passengers or employees is without merit. Defendant chose to install four, not three, cameras for safety purposes. All of the cameras are important to safety because the different angles and location of the cameras capture different images.

Even if plaintiff were able to establish a prima facie case of discrimination, defendant articulated a legitimate, non-discriminatory reason for terminating plaintiff. As previously noted, at the time of termination defendant believed plaintiff purposefully tampered with or sabotaged camera 4 which defendant believed imperiled the safety of passengers and employees. In

following its detailed human resources procedures, defendant determined plaintiff should be terminated because of his violation of CTA rules.

Even if plaintiff had established his prima facie case, because defendant articulated a legitimate non-discriminatory reason for its decision to terminate plaintiff's employment, plaintiff would be required to show that defendant's proffered reason was pretextual. Plaintiff must "specifically refute the facts which allegedly support the employer's proffered reasons" in order to demonstrate pretext." See Mills v. First Fed. Sav. & Loan Ass'n. of Belvidere, 83 F.3d 833, 845 (7th Cir. 1996). In determining "whether an employer's justification for dismissing its employee is pretextual, the inquiry is not whether the reason for the firing was a correct business judgment but whether the decision-makers honestly acted on that reason." Bahl v. Royal Idem. Co., 115 F.3d 1283, 1291 (7th Cir. 1997).

Plaintiff can not show that the proffered reasons were pretextual because at the time the decision to terminate plaintiff was made, defendant reasonably believed plaintiff's confession of placing the gum on the camera lens. Defendant reached that conclusion from plaintiff's statements in the July 31, 2000, meeting. In his deposition, plaintiff testified that he only confessed to placing the gum on the camera in the July 31, 2000, interview because Union Representative Dukes told him to make that statement. However, defendant did not have this explanation at the time it terminated plaintiff, and so was fully justified in relying on plaintiff's July 31, 2000, statements in terminating him.

In an attempt to show pretext by a pattern and practice of discrimination, plaintiff identifies three areas of defendant's business practices: discipline, overtime, and random drug-testing where he claims Hispanics were treated less favorably than other employees. To

7

demonstrate a pattern or practice of discrimination, plaintiff bears the burden of showing "by a preponderance of the evidence that national origin discrimination was the company's standard operating procedure- the regular rather than the unusual practice." See Adams v. Ameritech Servs., Inc., 231 F.3d 414, 422 (7th Cir. 2000).

Plaintiff argues three instances in which Hispanics were allegedly disciplined more severely than other employees. The first involves his retirement in lieu of discharge as compared to an African-American bus operator who was fired that day. Plaintiff claims that his conduct was not as serious as the African-American employee and therefore his conduct should not be disciplined as harshly as the other employee. Although the two situations are not identical, it does not mean that plaintiff's termination was any less warranted based on the CTA's Corrective Guidelines. The second instance is plaintiff's written warning for leaving the bus in "drive" as he went to the men's room in October 1999. The third instance is based upon facts not in evidence, and will accordingly be disregarded. The two instances for which there is evidence were isolated events which happened years apart. They are therefore not sufficient to support an inference of pretext based on a pattern or practice of discipline by defendant.

Plaintiff claims that Hispanic employees were counseled or reprimanded for working overtime while non-Hispanic and African-American employees were allowed to work overtime without being counseled or reprimanded. There are two procedures in which bus operators may work overtime, one entails signing up in the Workbook and the other, signing up in the Tripper Book. Plaintiff stated that the only time he felt that he was not given overtime on the basis of his national origin was when he requested overtime from the Workbooks. Mitchell's duties did not include assigning overtime from the workbook. Plaintiff also stated at his deposition that

8

Mitchell gave plaintiff a written warning every time plaintiff talked about overtime. That would perhaps be relevant to showing pretext, if plaintiff's termination was based on poor work performance. However, plaintiff's discharge had nothing to do with his working overtime at CTA. While during his employment plaintiff had filed two complaints with his Union regarding overtime, neither of which alleged national origin discrimination.

C.T.A.'s random testing procedures meet the United States Department of Transportation Federal Transit Administration's Drug and Alcohol Regulations for Mass Transit. Employees are anonymously and randomly selected by a computer program for drug testing that is not given information regarding employees' national origin. Based on the nature of the system, any given operator may be selected for testing any number of times in one calendar year or not at all. Although plaintiff stated that three managers told him to submit to drug testing, that does not show that he or any other Hispanic employee was tested for drugs more than non-Hispanic employees. Plaintiff's attempt to show a pattern or practice of discrimination to establish pretext has failed.

Plaintiff has failed to meet his burden in demonstrating a prima facie case of discrimination based on national origin. Prongs 2 and 4 of the prima facie case were not satisfied. Even if the plaintiff had established a prima facie case, defendant articulated a legitimate, non-discriminatory reason for his termination and plaintiff failed to demonstrate that the reason offered was a pretext for discrimination.

ORDERED: Defendant's motion for summary judgment [14] is granted.

02 C 2816

Judgment in favor of defendant, Chicago Transit Authority, and against plaintiff, Jose

Dominguez, shall be set forth on a separate document and entered in the civil docket. Fed. R.

Civ. Proc. 58, 79(a).

ENTER:

GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: **MAR 2 1 2003**